26477. CORLEY v. LEWLESS.
26478. BRADY v. LEWLESS.

ARGUED APRIL 13, 1971—DECIDED JUNE 17, 1971.

*Jay M. Sawilowsky, Benjamin E. Pierce, Jr.,* for appellants.

*George B. Rushing, Allgood & Childs, Thomas F. Allgood,* for appellee.

ALMAND, Chief Justice. This appeal is from a judgment of the Superior Court of Richmond County overruling motions by co-defendants for summary judgment. The suit, which was for damages, was brought by a minor, ten-year-old Clark Lewless, through his father as next friend. Named as defendants were another minor, twelve-year-old Bruce Brady, his mother, Mrs. Doris Brady, and his uncle, Edward Corley. Mrs. Brady was appointed guardian ad litem for Bruce for the purpose of defending him in the suit.

The facts are that on February 2, 1970, Bruce Brady, twelve years old, was sent by his mother to a shopping center for the purpose of getting a haircut. He and a friend, also a minor, proceeded on their bicycles to the shopping center where they found the barber shop closed. They began riding their bicycles in the

shopping center parking lot near one of the shops, which was operated by Mrs. Lewless, the mother of the minor plaintiff. Mrs. Lewless testified on deposition that she was fearful one of the boys might ride into a window, so she instructed the plaintiff to tell them to stop riding in the parking lot. What was said is disputed, but Bruce and his friend exchanged words with four younger boys, including the plaintiff, then chased them from the parking lot to the back yard of one of the younger boys. A fight ensued in which stones, cans, sticks and other objects were thrown. There is a conflict as to whether the plaintiff participated in the fight or was a spectator. In any event, the plaintiff was struck in the forehead by a piece of brick or stone. Bruce Brady admitted on deposition that he threw a brick or stone but said that it was thrown at "no one in particular." As a result of the injury the plaintiff was hospitalized, underwent surgery, and alleges that additional surgery will be required to repair a defect in his skull. At the time of the injury Bruce Brady resided with his mother in the home of her sister and brother-in-law, Edward Corley. Mrs. Brady at the time was separated and subsequently was divorced from her husband. She had been granted custody of Bruce and received monthly child support payments from her husband. She and the Corleys testified on deposition that she was residing with them temporarily because she had no other place to go after her separation. They agreed that she and Bruce would move elsewhere when she completed nurse's training and found employment. Mr. Corley, a construction worker, was on a job in New York at the time of the injury.

The allegations were that Bruce was under the control and supervision of his mother and also that of his uncle (Corley), "who is the head of the household in which he resides and stands in loco parentis as to said Bruce Brady." It was alleged that Clark's injuries were caused by "acts of wilful and wanton negligence" on the part of Bruce, and by "the concurring negligence of his mother and uncle . . . who failed to exercise proper supervision and control of his activities and who failed to impose the necessary restraints and disciplines in his activities so as to avoid" the injury to the plaintiff.

The petition was so drawn that it falls within the provisions of

*Code Ann.* § 105-113 (Ga. L. 1966, p. 424) which makes a parent or other person in loco parentis liable for the wilful torts of his minor children. The statute reads as follows: "Every parent or other person in loco parentis having the custody and control over a minor child or children under the age of 17 shall be liable for the wilful and wanton acts of said minor child or children resulting in death, injury or damage to the person or property, or both, of another. This section shall be cumulative and shall not be restrictive of any remedies now available to any person, firm or corporation for injuries or damages arising out of the acts, torts, or negligence of a minor child under the 'family purpose car doctrine' or any statute now in force and effect in the State of Georgia." The plaintiff's petition was so drawn as to allege on an alternative common law ground, recovery by reason of negligence on the part of Bruce Brady.

The defendants filed motions for summary judgment on the following grounds: (1) that the statute violates the due process clauses of the State and Federal Constitutions and the equal protection clause of the Federal Constitution because it would authorize recovery without liability and compel payment without fault; (2) that the defendants had not been negligent in any of the ways alleged and had not been negligent in any way whatsoever; and (3) that they could not be held responsible and liable as principals because Bruce, as agent, is immune to tort liability by virtue of his age. Mr. Corley urged the separate and additional ground that he did not stand in loco parentis as to Bruce and was not a person in loco parentis having custody and control over Bruce. The motions for summary judgment were overruled on each and every ground and the ruling was certified for direct appeal.

1. "Under the common law, traditionally, parents were not liable in damages for the consequences of the torts of their minor children solely because of the existence of the parent-child relationship. Unless the parent participated in the minor's tort, or through negligence caused or permitted the tort to occur, courts often absolved parents from liability, unless some other relationship, such as that of principal and agent, or master and servant, existed between parent and child." 8 ALR3d 614, Parent and Child, § 1[a]. The decisions of this court and of the Court of Ap-

peals have been in accord with these common law principles. The rule enunciated in Georgia is that the liability of a parent for an injury committed by his child is governed by the ordinary principles of liability of a principal for the acts of his agent, or a master for his servant. *Code* § 105-108. *Chastain v. Johns,* 120 Ga. 977 (48 SE 343, 66 LRA 958); *Stanford v. Smith,* 173 Ga. 165-168 (159 SE 666); *Hulsey v. Hightower,* 44 Ga. App. 455, 458 (161 SE 664). Recovery has been permitted where there was some parental negligence in furnishing or permitting a child access to an instrumentality with which the child likely would injure a third party. *Davis v. Gavalas,* 37 Ga. App. 242 (139 SE 577) (velocipede); *Faith v. Massengill,* 104 Ga. App. 348 (121 SE2d 657) (BB gun); *Herrin v. Lamar,* 106 Ga. App. 91 (126 SE2d 454) (rotary lawnmower); *Glean v. Smith,* 116 Ga. App. 111 (156 SE2d 507) (pistol); *McBerry v. Ivie,* 116 Ga. App. 808 (159 SE2d 108) (shotgun). In cases of this sort the question is whether the facts of the case impose upon the parent a duty to anticipate injury to another through the child's use of the instrumentality. *Sagnibene v. State,* 117 Ga. App. 239 (160 SE2d 274); *Chester v. Evans,* 115 Ga. App. 46, 49 (153 SE2d 583). In all of the above cited cases, causes of action against the parents of minor tortfeasors are rooted in the common law and are predicated on something more than the mere parent-child relationship. These common law rules remain effective except insofar as they may be modified by *Code Ann.* § 105-113. *Sagnibene v. State,* supra. The effect of the statute, if it be constitutional, is to establish an additional or alternative ground for finding parental liability. So, even if no cause of action would lie against the parents under common law, a suit nevertheless might be brought under *Code Ann.* § 105-113, provided the parent or other person in loco parentis had "custody and control" over the child, and provided further that the child's act was "wilful and wanton."

This court has not ruled previously on the constitutionality of *Code Ann.* § 105-113. Before doing so, it will be helpful to review its background. The General Assembly in 1956 passed legislation similar to *Code Ann.* § 105-113. The earlier Act (Ga. L. 1956, p. 699) provided in pertinent part: "Every parent having the custody and control of a minor child or children under the age of 17 shall

be liable for the wilful and wanton acts of vandalism of said minor child or children resulting in injury or damage to the person or property of another. . ." That statute was held, because of the use of the word "vandalism," to apply only to acts directed against property, or to personal injury incidental to acts directed against property. *Vort v. Westbrook,* 221 Ga. 39 (142 SE2d 813); *Bell v. Adams,* 111 Ga. App. 819 (143 SE2d 413); *Landers v. Medford,* 108 Ga. App. 525, 527 (133 SE2d 403). The 1966 enactment, which superseded the earlier statute, omitted the word "vandalism" and extended coverage of the statute to persons in loco parentis. In *Vort v. Westbrook,* supra, the 1956 enactment was challenged as being violative of the due process clauses of the State and Federal Constitutions and the equal protection clause of the Federal Constitution. We did not reach that issue, however, because only personal injury was involved. Under the "vandalism" construction no cause of action was stated, and it was not necessary to decide the constitutional question. In a later case, *Gilbert v. Floyd,* 119 Ga. App. 670 (168 SE2d 607), a trial court ruled that the 1966 statute was constitutional, but there was no appeal from that ruling.

Similar statutes are found in many other states, although they generally impose liability upon parents only for damage to property, and they generally set a limit on the amount recoverable. Research reveals only three cases in which such statutes have been subjected to constitutional challenge. In all three cases the statutes were upheld. Kelly v. Williams (Tex. Civ. App.) 346 S. W. 2d 434; General Insurance Co. v. Faulkner, 259 N. C. 317 (130 SE2d 645); Mahaney v. Hunter Enterprises (Wyo.) 426 P. 2d 442. These cases, of course, are not binding, and the statutes involved, although similar, are distinguishable from the Georgia statute. In all three cases the scope of the statutes was limited to property damage, and each contained a limitation of $300 or $500 on the amount recoverable. Such recoveries are in the nature of penalties, because they do not have as their objective compensation of the injured parties. As the North Carolina court noted in General Insurance Co. v. Faulkner, supra, the statutes "appear to have been adopted not out of consideration for providing a restorative compensation for the victims of injurious or tortious

conduct of children, but as an aid in the control of juvenile delinquency." On the other hand, *Code Ann.* § 105-113 is not penal but seeks to provide compensation in full for property damage or for personal injury. It imposes vicarious tort liability solely on the basis of the parent-child relationship. The requirements that the parent have "custody and control" over the child and that the child's act be "wilful and wanton" do not alter the fact that merely because of the relationship of parent and child, a tort liability is created which otherwise would not exist. It would not matter that the parent was entirely free from negligence or fault or even that he had no knowledge of his child's tort.

An analagous situation was presented in *Frankel v. Cone,* 214 Ga. 733 (107 SE2d 819), in which a statute (Ga. L. 1955, pp. 454, 455) imposed liability upon the owner of a car if it was being used in the prosecution of his business or for his benefit, even though it was operated without notice to him and without his knowledge or consent. We held there that the statute was unconstitutional, because to do otherwise "would be to hold a party liable for the negligent conduct of another . . . irrespective of how careful or free from negligence the owner was, the only condition being that [the car] be operated for the benefit of the owner." P. 736. In *Buchanan v. Heath,* 210 Ga. 410 (80 SE2d 393), we held unconstitutional a statute (*Code Ann.* § 94-707) which made a railroad section foreman liable to pay owners double the value of stock killed on his section for his failure to file a list of the marks and brands of the stock killed, irrespective of whether he had knowledge that the stock had been killed. We held that the due process clauses of the State and Federal Constitutions were violated because the section foreman was automatically made liable by his failure to file a list of stock killed, regardless of any mitigating circumstances which might exist. As in the instant case, liability was created solely by virtue of the statute, regardless of whether the section foreman was at fault or even had knowledge that stock had been killed. Also applicable is the ruling in *Lloyd Adams v. Liberty Mutual Ins. Co.,* 190 Ga. 633, 641 (10 SE2d 46), where this court stated: "To allow any recovery on the basis stated by the statute would deprive the defendant of property without due process of law, would authorize a recovery without liability,

and would compel payment without fault." These cases are controlling, and, in our opinion, *Code Ann.* § 105-113 contravenes the due process clauses of the State and Federal Constitutions (*Code Ann.* §§ 1-815, 2-103) and is void.

The liability of the defendants Mrs. Brady and Edward Corley being predicated solely on *Code Ann.* § 105-113; and that section being unconstitutional, it was error not to sustain their motions for a summary judgment.

*Judgment reversed. All the Justices concur.*