173 N.J. Super. 204 (1980)
413 A.2d 981
BOARD OF EDUCATION OF PISCATAWAY TOWNSHIP, A PUBLIC BODY OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MR. JOSEPH CAFFIERO, MRS. JOSEPH CAFFIERO, HIS WIFE, JAY CAFFIERO, MR. DANIEL O'DONNELL, MRS. DANIEL O'DONNEL, HIS WIFE, FRANCIS O'DONNEL, MR. DEAN MARTONE, MRS. DEAN MARTONE, HIS WIFE, AND DEAN MARTONE, DEFENDANTS-RESPONDENTS.
BOARD OF EDUCATION OF THE BOROUGH OF ROSELLE, PLAINTIFF-APPELLANT,
v.
TULIO MONAGAS, "JANE" MONAGAS, (FIRST NAME BEING FICTITIOUS) AND ANGEL MONAGAS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1979.
Decided April 1, 1980.
*205 Before Judges CRANE, MILMED and KING.
Frank J. Rubin argued the cause for appellant Board of Education of Piscataway Township (Rubin, Lerner & Rubin, attorneys; Frank J. Rubin, of counsel; David B. Rubin on the brief).
Eugene A. Cross argued the cause for appellant Board of Education of Roselle (Rubenson & Cross, attorneys; Eugene A. Cross, of counsel and on the brief).
A. Herbert D'Amico argued the cause for respondents Daniel O'Donnell and Mrs. Daniel O'Donnell.
James D. Martin argued the cause for respondents Joseph Caffiero and Mrs. Joseph Caffiero (Lynch, Mannion, Lutz & Lewandowski, attorneys; James D. Martin on the brief; also Monico and Rappa, attorneys; Leonard F. Rappa on the letter brief).
Michael Muscio argued the cause for respondents Tulio Monagas, "Jane" Monagas and Angel Monagas (Frank Cofone, Jr., on the letter brief).
*206 Alfred E. Ramey, Jr., Deputy Attorney General, argued the cause for amicus curiae Commissioner of Education (John J. Degnan, Attorney General of New Jersey, attorney; Stephen Skillman, Assistant Attorney General, of counsel; Alfred E. Ramey, Jr., Deputy Attorney General, on the brief).
David W. Carroll, General Counsel for the New Jersey School Boards Association, filed a brief for the Association amicus curiae (Christine D. Weger, Associate Counsel, on the brief).
No brief was filed on behalf of any of the other parties.
PER CURIAM.
The central issue before us in these consolidated appeals is the constitutionality of N.J.S.A. 18A:37-3, which reads:
The parents or guardian of any pupil who shall injure any school property shall be liable for damages for the amount of the injury to be collected by the board of education of the district in any court of competent jurisdiction, together with costs of suit.
The essential facts may be briefly stated. Plaintiff Board of Education of Piscataway Township brought suit against defendants Jay Caffiero, Francis O'Donnell and Dean Martone, seeking recovery from them for extensive damage caused to its school property. In essence, the board claimed that the damage was caused by acts of vandalism on the part of Jay, Francis and Dean who were at the time enrolled as students in the Piscataway school system. The remaining defendants in that action are the respective parents of the children. As to them the board sought recovery grounded: (a) in one count, on alleged negligent supervision of their children, and (b) in another count, on their vicarious liability under the above quoted statute. A judgment by default in the sum of $28,540 was entered in favor *207 of the board and against the Caffieros and the Martones. A consent order was thereafter entered vacating, on condition,[1] the default judgment against the Caffieros. In their responsive pleadings, the Caffieros and the O'Donnells challenged the constitutionality of N.J.S.A. 18A:37-3. Seeking resolution of the constitutional issue, the board moved for summary judgment against the parents for any damage their children might ultimately be found to have committed. In his opinion reported at 159 N.J. Super. 347 (Law Div. 1978), Judge Stroumtsos, the trial judge, held (at 351) the statute unconstitutional "for the reason that it deprives a parent of due process of law by imposing upon him unlimited liability, regardless of fault, for the wrong committed by his child solely on the basis of the parent-child relationship." Plaintiff's motion was accordingly denied and an order to that effect was entered. We granted the board's motion for leave to appeal from that interlocutory order.
In another action plaintiff Board of Education of the Borough of Roselle sued to recover from defendant Angel Monagas for damage to its school property, claiming that Angel, a pupil in the Roselle school system at the time, caused the damage. The remaining defendants in that suit are Angel's parents. As to them the board sought recovery based on their vicarious liability under N.J.S.A. 18A:37-3. Defendants interposed a general denial and by way of defense challenged the constitutionality of the statute, claiming that it deprived them of property without due process of law. The parents thereafter moved for a dismissal of the claim[2] made against them. Judge Long, the trial judge who heard that motion, dismissed the board's claim *208 against defendant-parents "for the reasons expressed by the court in Bd. of Education of Piscataway v. Caffiero, 159 N.J. Super. 347 (Law Div. 1978)." We granted the Board's motion for leave to appeal from that dismissal and for consolidation of the two appeals.
While we can understand Judge Stroumtsos' disagreement with the reasoning of another trial judge in arriving at a contrary result in Palmyra Bd. of Ed. v. Hansen, 56 N.J. Super. 567 (Law Div. 1959),[3] we find his reliance upon Doe v. Trenton, 143 N.J. Super. 128 (App.Div. 1976), aff'd 75 N.J. 137 (1977), and Corley v. Lewless, 227 Ga. 745, 182 S.E.2d 766 (Sup.Ct. 1971), to be misplaced. In Doe this court struck down as unconstitutional a criminal statutory presumption in a municipal ordinance "that a parent ... is responsible for the misbehavior of a child who twice within one year is adjudged guilty of acts defined as violations of the public peace." 143 N.J. Super. at 130. The statute before us imposes vicarious civil liability requiring parents to respond in money damages for their child's damage or destruction of school property. Here, we are not confronted with any criminal statutory presumption which would require for its validity a finding "with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Leary v. United States, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57, 82 (1969).
In Corley the statute which the Supreme Court of Georgia held unconstitutional imposed vicarious liability upon a parent or other person in loco parentis having custody and control of a *209 child under 17, for the "wilful and wanton acts" of the child "resulting in death, injury or damage to the person or property, or both, of another." 182 S.E.2d at 768. The court concluded that the statute, which imposed liability for both personal injury and property damage, "contravenes the due process clauses of the State and Federal Constitutions ... and is void." Id. at 770. In doing so it relied heavily upon the policy of Georgia against imposition of liability without fault. The general trend is of course, to the contrary. Thus,
... the last hundred years have witnessed the overthrow of the doctrine of "never any liability without fault," even in the legal sense of a departure from reasonable standards of conduct. It has seen a general acceptance of the principle that in some cases the defendant may be held liable, although he is not only charged with no moral wrongdoing, but has not even departed in any way from a reasonable standard of intent or care.... [Prosser, Torts (4 ed. 1971), § 75 at 494]
See, also, A. & B. Auto Stores of Jones St., Inc. v. Newark, 59 N.J. 5 (1971); Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55 (1960).
It is well settled that "[a] law will not be declared void unless its repugnancy to the Constitution is so manifest as to leave no room for doubt." In re Freygang, 46 N.J. Super. 14, 27-28 (App.Div. 1957), aff'd 25 N.J. 357 (1957). See, also, English v. Newark Housing Auth., 138 N.J. Super. 425, 431 (App.Div. 1976). "[E]very possible presumption favors the validity of an act of the Legislature." N.J. Sports & Exposition Authority v. McCrane, 61 N.J. 1, 8 (1972), app. dism., 409 U.S. 943, 93 S.Ct. 270, 34 L.Ed.2d 215 (1972). And, the guaranty of due process requires "only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained." Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934); Schmidt v. Newark Bd. of Adj., 9 N.J. 405, 414 (1952). Guided *210 by these basic principles, we discern no constitutional infirmity in the imposition by N.J.S.A. 18A:37-3 of strict vicarious liability on parents for the acts of their school children resulting in damage to school property. We find this to be an entirely reasonable means designed to achieve essential state purposes  compensating innocent victims (here, the taxpaying public generally) for damage to school property caused by juvenile misconduct, and attempting to deter juvenile delinquency by, in effect, obligating parents to exercise greater supervision, guidance, and control over their children who attend the local public school system. See Rudnay v. Corbett, 53 Ohio App.2d 311, 374 N.E.2d 171, 175 (Ct.App. 1977); Kelly v. Williams, 346 S.W.2d 434, 437-438 (Tex.Civ.App. 1961); Watson v. Gradzik, 34 Conn.Sup. 7, 373 A.2d 191, 193 (C.P. 1977); Vanthournout v. Burge, 69 Ill. App.3d 193, 25 Ill.Dec. 685, 687, 387 N.E.2d 341, 343 (App.Ct. 1979). See, also, Prosser, supra, § 123 at 871.
In In re Sorrell, 20 Md. App. 179, 315 A.2d 110 (Ct.Spec.App. 1974), the court noted:[4]
Forty-six states are said to have enacted statutes imposing strict vicarious liability upon parents for damages caused by wilful misconduct of their infant children. Most of the statutes provided limited reimbursement for property damage only. Fourteen, including that of Maryland, impose limited strict vicarious liability both for property damage and for medical expenses stemming from personal injuries.
The constitutionality of such statutes has been attacked in four cases. In General Insurance Co. of America v. Faulkner, 259 N.C. 317, 130 S.E.2d 645; Kelly v. Williams, 346 S.W.2d 434 [Texas Civil Appeals], and Mahaney v. Hunter *211 Enterprises, Inc., 426 P.2d 442 [Wyoming] the constitutionality of the statutes was upheld. In Corley v. Lewless, 227 Ga. 745, 182 S.E.2d 766 the statute was held unconstitutional.

Faulkner, supra, thus explicated its position favoring constitutionality (130 S.E.2d p. 650):
"[The statute's] rationale apparently is that parental indifference and failure to supervise the activities of children is one of the major causes of juvenile delinquency; that parental liability for harm done by children will stimulate attention and supervision; and that the total effect will be a reduction in the antisocial behavior of children."
thereafter declaring:
"It is our opinion, and we so hold, that the enactment by the General Assembly of G.S. § 1-538.1 is within the police power of the State of North Carolina, and that it is not violative of the provisions of Article I, Section 17, of the State Constitution or of the provisions of the Fifth Amendment to the Federal Constitution." [315 A.2d at 114]
The legislation here under review does not deprive the respondent parents of property without due process of law nor does it deny them the equal protection of the laws. It is clearly constitutional, and we discern no sound reason for holding otherwise merely because it places no dollar limit on liability. See, generally, Annotation, "Validity and Construction of Statutes Making Parents Liable for Torts Committed by their Minor Children," 8 A.L.R.3d 612 (1966); Annotation, "Parents' Liability for Injury or Damage Intentionally Inflicted by Minor Child," 54 A.L.R.3d 974 (1973). The Caffieros' and O'Donnells' challenge to the constitutionality of the statute on equal protection grounds is without merit. They suggest that the legislation is not free from invidious discrimination, noting that it imposes unlimited liability upon parents of public school pupils while the liability of parents of nonpublic school pupils is limited by N.J.S.A. 2A:53A-15 to $250. However, on January 18, 1980 Senate No. 650 was signed into law, and it is now Chapter 318 of the Laws of 1979. That act, in essence, amends N.J.S.A. *212 2A:53A-15 by eliminating the limit on liability previously expressed therein.[5]
The orders under review are reversed. The matters are remanded to the trial court for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.
CRANE, P.J.A.D. (dissenting).
Because of my belief in the necessity of fundamental rationality in a rule of law, I cannot agree with the views of my learned colleagues and hence must dissent.
The statute under review, N.J.S.A. 18A:37-3, imposes vicarious liability without fault upon the parents or guardians of a pupil who injures any public school property. It does not require a showing of fault on the part of the pupil nor does it require a showing of a lack of reasonable supervision and control on the part of the parent or guardian, as does N.J.S.A. 2A:53A-15. The liability imposed by N.J.S.A. 18A:37-3 is absolute and is predicated solely on the relationship of parentage or guardianship.
In my view the enactment of such a law is beyond the power of the Legislature. Every principle of law, whether pronounced by a legislature or a court, must have a rational basis.
It is not every Act, legislative in form, that is law. Law is something more than mere will exerted as an act of power ... Arbitrary power, enforcing its edicts to the injury of the persons and property of its subjects, is not law, whether manifested as the decree of a personal monarch or of an impersonal multitude. [Hurtado v. California, 110 U.S. 516, 535-536, 4 S.Ct. 111, 120-121, 28 L.Ed. 232, 238 (1884)].
*213 A legislative enactment which is arbitrary and unreasonable violates standards of due process of law. Hudson Circle Servicenter, Inc. v. Kearny, 70 N.J. 289, 301 (1976). The exercise of legislative power must be reasonable. There must be a rational connection between the imposition of liability and the conduct or activity upon which the liability is predicated. As was said in Roselle v. Wright, 21 N.J. 400 (1956), with relation to an exercise of the police power,
The exercise of the police power is contained by the rule of reason, the antithesis of the arbitrary action that is alien to the genius and spirit of our democratic society. The constitutional principles of due process and the equal protection of the laws ordain that the exercise of the power be wholly free of unreason and arbitrariness, and that the means selected for the realization of the policy bear a real and substantial relation to that end. [at 409-410]
The majority opinion refers to A. & B. Auto Stores of Jones St. v. Newark, 59 N.J. 5 (1971), and Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55 (1960) as examples of instances in which statutes imposing liability without fault have been upheld. The Newark case dealt with a statute (N.J.S.A. 2A:48-1 et seq.) imposing absolute liability on a municipality for damages caused during a riot. Obviously the statute is predicated upon the duty of a city to control a riotous mob and prevent damage to private property. The Quality Bakery case involved a statute (N.J.S.A. 6:2-7) which imposed liability on the operator of an aircraft which caused injuries to persons or property on the land without regard to whether the operator was negligent. It is quite apparent that the operation of an aircraft creates a risk that persons and property on the ground may be injured; consequently, it may be said that a reasonable relationship exists between the act of operating an aircraft and the imposition of liability. The majority opinion also refers to Professor Prosser's treatise, Law of Torts (4 ed. 1971), § 67 at 434, to the effect that there is a general trend toward the imposition of liability without fault. Examination of the illustrations given by Professor *214 Prosser all relate to situations in which a risk of harm has been created by the party upon whom liability is imposed, such as keeping wild animals, putting a defective product into the stream of commerce, blasting, flooding, keeping fires, pile-driving and so forth. All of those instances involve situations where a risk of harm is created by action or a failure to act of the party held liable. That is not the case here.
A statute which predicates liability solely on the status of the party to be held liable closely resembles an act of attainder which is prohibited by N.J.Const. (1947), Art. IV, § VII, ¶ 3, and U.S.Const. Art. I, § 9, par. 3. This statute imposes liability upon a specified group of persons, i.e., parents and guardians, by legislative fiat. Liability based solely upon status is arbitrary and beyond the legislative power of the state. See Robinson v. California, 370 U.S. 660, 679, 82 S.Ct. 1417, 1426, 8 L.Ed.2d 758, 770 (1961), concurring opinion of Justice Harlan. See, also, Williams v. Sills, 55 N.J. 178, 186 (1970).
Heretofore, as a matter of common law, New Jersey has adhered to the view that a parent may be liable for the tortious conduct of a child if, but only if, the parent fails to exercise reasonable care to control the behavior of the child. Zuckerbrod v. Burch, 88 N.J. Super. 1, 6 (App.Div. 1965); Mazzilli v. Selger, 13 N.J. 296 (1953); M'Calla v. Wood, 2 N.J.L. 81 (Sup.Ct. 1806). See, also, Stoelting v. Hauck, 56 N.J. Super. 386, 401 (App.Div. 1959), rev'd on other grounds 32 N.J. 87 (1960). This principle of law is in accord with 2 Restatement, Torts 2d, § 316 at 123 (1965), and has now been made a part of our statutory law by N.J.S.A. 2A:53A-15.
If the Legislature may impose liability upon the parents or guardians of pupils who injure school property without requiring a showing that the parents failed to fulfill some duty, why may it not impose such liability upon grandparents or aunts and uncles? Why may it not impose liability upon any person who witnesses an injury to school property, or any person who lives *215 within 1,000 feet of a school? The point is that there is no logical connection between being a parent or guardian and injury to school property by a pupil. Reagan, "A Constitutional Caveat on the Vicarious Liability of Parents," 47 Notre Dame Lawyer 1321 (1972). The propagation or adoption of children is not, in the minds of reasonable persons, thought to create an unreasonable risk of harm for which liability without fault may be imposed.
A statute which sanctions the visitation of the sins of children upon their fathers without proof of wrongdoing on the part of either is fundamentally unfair and brings about a deprivation of property without due process. U.S. Const., Amends. V and XIV; N.J.Const. (1947), Art. I, Par. 1. Doe v. Trenton, 143 N.J. Super. 128 (App.Div. 1976), aff'd o.b. 75 N.J. 137 (1977). I would accord our Constitution, which is "widely recognized as the most forward-looking document of its kind in the Nation,"[1] its full measure of protection.
I would affirm.
NOTES
[1] The condition being that the Caffieros would not, pending further order of the court, "convey, dispose of or encumber any real estate owned by them."
[2] The first count of the board's complaint.
[3] The court in Palmyra, in upholding the constitutionality of N.J.S.A. 18:14-51, predecessor to N.J.S.A. 18A:37-3, reasoned in part that parents may, if they choose, escape liability under the statute since they "do not have to send their child to a public school and thereby be subject to the conditions under which free public education is provided." 56 N.J. Super. at 572. We too disagree with that reasoning. It has no place in a proper determination of the constitutional issue raised.
[4] The court held constitutional the "limited strict vicarious liability" statute of Maryland involved in the case. It remanded the cause for a hearing "wherein evidence is produced that is legally sufficient to support a conclusion that damages authorized by it were wilfully or maliciously caused by or committed by a child under eighteen years." [315 A.2d at 117]
[5] N.J.S.A. 2A:53A-15 applies generally to parents of all minors and, as amended, reads:

A parent, guardian or other person having legal custody of an infant under 18 years of age who fails or neglects to exercise reasonable supervision and control of the conduct of such infant, shall be liable in a civil action for any willful, malicious or unlawful injury or destruction by such infant of the real or personal property of another.
[1] Milmed  Constitution of 1947, N.J.S.A., Const. Arts. 1 to 3 at 110.