751 So.2d 647 (1999)
Christine CANIDA and The Dade County School Board, Appellants,
v.
Lyle CANIDA, Appellee.
Nos. 99-300, 99-188.
District Court of Appeal of Florida, Third District.
December 22, 1999.
Rehearing Denied February 16, 2000.
*648 Mitrani, Rynor, Adamsky, Macaulay & Zorrilla and Pamela A. Chamberlin, Miami; Peters Robertson Demahy Parsons Mowers Passaro & Drake and Michael T. Flury, Miami, for appellants.
Hardeman & Suarez and Richard A. Warren, Miami, for appellee.
Before SCHWARTZ, C.J., and GREEN and FLETCHER, JJ.
FLETCHER, Judge.
Christine Canida appeals from a final summary judgment in favor of Lyle Canida. We affirm.
Christine and Lyle Canida are the divorced parents of the minor, Bradley Canida. The mother has primary residential custody under the divorce decree, subject to visitation by the father every other weekend. In August 1997, while living with his mother, the then twelve-year-old Bradley vandalized property of Gulfstream Elementary School. The Dade County School Board sued both parents for damages under section 741.24, Florida Statutes (1997) which provides that the school district is entitled to recover damages "from the parents of any minor under the age of 18 years, living with the parents, who maliciously or willfully destroys or steals property..." belonging to the school district. The father moved for summary judgment regarding his liability, arguing that the statute intended to limit liability to the parent(s) who have actual custody of and control over the minor child. The lower court granted the father's motion for summary judgment, leaving the entire liability with the mother. The mother appealed.
The issue, one of first impression in Florida, is whether section 741.24 applies to both parents equally regardless of marital status or custody/parental responsibility circumstances, or whether it applies only to the parent with whom the child is living at the time of the offense.[1] Under the facts presented in this case, the child was living with the mother at the time he vandalized school property, and it is the mother who had primary custody and control over the child. We agree with the *649 lower court that the statute contemplates finding the mother liable for the child's offenses.
Section 741.24, Florida Statutes, was enacted in 1956 and since then the wording has remained virtually unchanged.[2] The statute was intended to "aid in reducing juvenile delinquency by imposing liability upon the parents who control minors ..." Stang v. Waller, 415 So.2d 123, 124 (Fla. 4th DCA 1982). The parties properly agree that the statute is in derogation of the common law and thus must be strictly construed in favor of the common law. See Ady v. American Honda Finance Corp., 675 So.2d 577 (Fla. 1996); Slawson v. Fast Food Enterprises, 671 So.2d 255 (Fla. 4th DCA 1996). At common law, the parents were not held liable for the damages caused by their minor child except in certain limited situations. See Gissen v. Goodwill, 80 So.2d 701 (Fla.1955). As the Stang Court observed, it is the crucial element of parental control over the minor child that indicates who will bear liability for that child's acts. 415 So.2d at 124; see also id. at 703 (citations omitted). Where the parents are divorced and one parent necessarily has primary residential custody over the minor, that custodial parent has the immediate and day-to-day opportunity to exert his or her parental control and discipline over the resident child. In this case, the child lives with the mother, and it is the mother who has routine and daily custody and control over the minor child. Since the common law would not impose parental liability absent the parent's opportunity and ability to control the child, strict construction of the phrase "living with" necessitates the conclusion that the non-custodial father's overnight visitation privilege with his son every other weekend does not rise to "living with" the father for purposes of imposing liability pursuant to section 741.24.[3]
Appellant argues that the plain meaning of section 741.24 as applied to these facts must necessarily hold both parents liable, because the word "parents" is plural. This is incorrect. Section 1.01(1), Florida Statutes (1993) provides that "[i]n construing these statutes and each and every word, phrase, or part hereof, where the context will permit ... [t]he singular includes the plural and vice versa." [emphasis supplied] This means that the word "parents" necessarily includes the singular "parent" as well.
Bradley Canida was living with his parent (singular), i.e., his mother, when he committed the vandalism. He was not living with his father, but only occasionally visited with him. Where, as here, the language of a statute is clear, the statute must be given its plain and ordinary meaning. E.g., Streeter v. Sullivan, 509 So.2d 268 (Fla.1987); A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157 (1931). Construed narrowly and according to its plain meaning, the "living with the parents" [read, "parents" or "parent"] language excludes from liability the non-custodial parent who has only occasional visitation rights with the child.[4]
*650 The Final Judgment is affirmed.[5]
SCHWARTZ, C.J., concurs.
GREEN, J. (dissenting)
As I view this case, the issue for our determination on this appeal is whether divorced parents can jointly be held liable under section 741.24, Florida Statutes (1997), where: (1) the parents have been awarded shared parental responsibility of their minor child pursuant to section 61.13, Florida Statutes (1989); and (2) the minor child lives with each of the parents on alternate weekends. Because section 741.24 does not require that a minor child reside simultaneously with both parents in the same household in order for liability to attach, I believe that the answer to this question, under this particular factual scenario,[6] must be answered in the affirmative. Moreover, I believe that such a construction of section 741.24 would be wholly consistent with the concept of shared parental responsibility as found in section 61.046(11), Florida Statutes (1997). I therefore respectfully dissent to the majority's construction of section 741.24.
This negligence action began when the Dade County School Board filed suit against Christine and Lyle Canida and others. According to the allegations contained in the complaint, the Canidas' then twelve year old son, Bradley, and another boy vandalized Gulfstream Elementary School in August 1997. At the time, Christine and Lyle Canida had been divorced for seven years and had two minor children, including Bradley. According to their settlement agreement which was incorporated and adopted in the final judgment of dissolution of marriage, both Christine and Lyle were ordered to share parental responsibility of their minor children "concerning their health, education, religion, and general welfare." By agreement, the primary physical residence of the minor children was to be with their mother with the secondary physical residence resting with their father. The minor children regularly resided with their father on alternate weekends in accordance with the parties' agreement and final dissolution judgment.
After the alleged vandalism incident in August 1997, the school board sued both Christine and Lyle Canida for damages pursuant to Florida's parental liability statutes section 741.24. This statute provides in relevant part that: "Any ... school district ... shall be entitled to recover *651 damages in an appropriate action at law ... from the parents of any minor under the age of 18 years, living with the parents, who maliciously or willfully destroys or steals property ... belonging to such ... school district." § 741.24(1), Fla. Stat. (1997) (emphasis added).
Lyle Canida thereafter moved for final summary judgment arguing that under the clear language of section 741.24(1), a parent is only liable for the acts of a minor who lives with that parent. Further, since it was undisputed that on the date of the incident in question, Bradley maintained his primary residence with his mother, Lyle asserted that he could have no liability for Bradley's alleged tortious acts as a matter of law under section 741.24(1). After finding that the intent of this statute is to control juvenile delinquency by imposing liability upon parents who control minors, see Stang v. Waller, 415 So.2d 123 (Fla. 4th DCA 1982), the trial court granted this motion reasoning that a parent could only control a minor if that minor lived with that parent and that language providing for "shared parental responsibility" in a dissolution decree under chapter 61 cannot impose a burden on an absent parent of strict vicarious liability caused by his minor children. With all due respect to both the trial court and majority, such a construction of section 741.24(1) is unwarranted and virtually emasculates the concept of shared parental responsibility under chapter 61. First of all, in order for liability to be imposed against a parent(s) under section 741.24(1), its plain and unambiguous language simply requires that the miscreant minor "live" with the parents. The statute does not mandate that the parent with whom the minor lives be the child's custodial parent.
In this case, for purposes of the statute, I believe that Bradley actually lives with both parents, albeit at separate times and at their separate residences. It is undisputed that Bradley regularly lives with his father on alternate weekends. As such, under section 741.23(1) both parents are equally responsible for Bradley's alleged tortious actions under section 741.23(1). I believe that this construction of section 741.24(1) is not only consistent with the intent of this statute, but is also consistent with the legislative intent behind the concept of shared parental responsibility under chapter 61. Wherever possible, two statutes with related purposes such as we have here should be construed in pari materia. See State v. Cohen, 696 So.2d 435, 441 (Fla. 4th DCA 1997).
As the majority states, the fourth district's Stang decision has found the intent of section 741.24 to be an "aid in reducing juvenile delinquency by imposing liability upon parents who control minors ..." See Maj. op. at 649. Based upon the legislative intent, the majority then apparently posits that in the case of a divorce, only the primary residential parent somehow has the duty and/or ability to control the minor child's activities. See Maj. op. at 649.[7] In this case, both parents requested and received shared parental responsibility for the minor child in their dissolution action. Therefore, I cannot agree with the majority that the mother bears sole responsibility for the actions of the minor in this case.
Under chapter 61, "shared parental responsibility means a court ordered relationship in which both parents retain full parental rights and responsibilities with respect to their child and in which both parents confer with each other so that major decisions affecting the welfare of the child will be determined jointly." See § 61.046(11), Fla. Stat. (emphasis added). Under this statute, shared responsibility for the child means joint liability for the child's actions. Where shared parental responsibility *652 has been ordered in a final dissolution judgment, both parents are equally charged with the responsibility of the child's upbringing and instilling good and sound values within the child that will hopefully dissuade the child from engaging in acts of delinquency. In short, shared parental responsibility must mean shared liability. Section 61.046(11) imposes a duty on both parents to confer and share equally in the rearing and supervision of their minor child, albeit from their separate residences. Only where the parties reach an impasse can any dispute be then presented to the court for resolution. See e.g., Sotnick v. Sotnick, 650 So.2d 157, 159-60 (Fla. 3d DCA 1995) (holding that "The principle of shared parental responsibility applies to the religious upbringing of the children, just as it applied to the other `major decisions affecting the welfare of the child.'")
With the majority's holding, I find it truly unsettling that although both of the minor's parents by agreement and court decree have been granted shared parental responsibility for the minor's care and general welfare under Chapter 61, only one of the parents can be held liable for the minor's allegedly tortious acts under Florida's parental liability tort statute. To date, according to my research, no state with a similar parental tort liability statute has ever so reached such a result.[8]
In its construction of section 741.24 in relation to section 61.046(11), the majority has effectively permitted these statutes to operate as a sword and shield for the secondary residential parentsin this case the father. On the one hand, the father in this case has successfully sought and procured an equal voice and equal participation in all of the major decision making processes involving the rearing of this minor child under chapter 61. Yet, when the child allegedly goes astray and causes damages to others, the father is now allowed to absolve himself from any and all liability under section 741.24 simply because he is the secondary residential parent. What, if for example, a minor's tortious conduct has been facilitated by a joint decision made by both parents having shared parental responsibility (e.g. a decision not to impose or enforce a curfew)? Under the majority decision, the primary residential parent would nevertheless bear sole responsibility for this joint decision under section 741.24. To avoid such an inequitable and outrageous result, I believe that sections 741.24 and 61.046(11) can and must be construed in para materia in order to give effect to the legislative intent of both statutes. See Agency for Health Care Administration v. Estate of Johnson, 743 So.2d 83 (Fla. 3d DCA 1999) (holding that "It is axiomatic ... that the courts must presume that statutes are passed with knowledge of prior existing statutes and where possible, it is the duty of the courts to favor a construction that gives a field of operation to all rather than *653 construe one statute as being meaningless or repealed by implication").
Thus, for the foregoing reasons, I respectfully dissent.
NOTES
[1] We note that many other states have enacted similar parental liability tort statutes, many of which use the same "living with" or "residing with" requirement. See, e.g., § 6-5-380, Ala.Code (1993)(amended in 1994 to "care or control"); § 9-25-102, Ark. Stat. (1998); § 13-21-107, Colo. Stat.; Title 10, Pt. III, Ch. 39, § 3922, Del.Code (1975); § 6-210, Idaho Code (1998); 740 Ill. Stat. § 115/3 (1998); Ind. St. XX-XX-X-X (1999); § 38-120, Kan. Stat. (1993); § 600.2913, Mich. Laws (1998); § 540.18, Minn.Stat. (1998); § 40-6-237, Mont.Code (1998); § 43-801, Neb. Stat. (1998); § 32-03-39, N.D. Cent.Code (1997); 23 Okla. Stat. § 10 (1998); § 25-5-15, S.D. Codified Laws (1998); § 37-10-101, Tenn. Code (1998); § 8.01-43-44, Va.Code (1998); § 4.24.190, Wash. Rev.Code (1998). Other states use "custody and control" or similar language. See § 537.045, Mo. Stat. (1998); § 41.470, Nev.Rev.Stat. (1998); § 32-1-46, N.M. Stat. (1998); § 78-a, N.Y. Gen. Mun. Law (1998); Title 11, §§ 2001-2005, Pa. Stat. (1998); Title 2, § 41.001, Tex. Fam.Code (1998); § 895.035, Wis. Stat. (1998). Other states specifically address the divorce context by imposing liability only on the parent who has legal custody under the divorce decree. See § 613.16, Iowa Code (1998); § 93-13-2, Miss.Code (1998); § 2A:53A-15, N.J. Stat. (1998); § 1-538.1, N.C. Gen.Stat. (1998); § 3109.9 Ohio Rev.Code (1998); § 30.765, Or.Rev.Stat. (1998); § 78-11-20, Utah Code (1998); Title 15, § 901, Vt. Stat. (1998); § 14-2-203, Wyo. Stat. (1998). A small number of states have no control, custody, or residence restrictions at all. See § 52-572, Conn. Gen.Stat. (1982); § 3-829, Md. Cts. & Jud. Proc.Code (1991).
[2] When the statute was enacted it contained a monetary limitation of liability. This amount was increased over the years, and in 1988 the statute was amended to eliminate the monetary limitation entirely.
[3] While the record indicates that in June, 1993, Christine and Lyle Canida entered into a stipulation that primary residential custody of the minor children should be changed to Lyle Canida until the mother found suitable housing, this is of no moment as it is undisputed that at the time of the incident in August 1997 that Bradley Canida was in the custody of, and primarily resided with, his mother.
[4] The courts of other states with similar parental liability statutes have concluded that, in the context of divorced parents, the statutes are intended to apply only to parents who have the actual ability to control the child, i.e., the parent with whom the child resides at the time the child commits the offense. See, e.g., Gearity v. Salvo, 40 Conn.Supp. 185, 485 A.2d 940 (1984); In re William George T., 89 Md.App. 762, 599 A.2d 886 (1992); Leonard v. O'Neil, 159 Misc.2d 1029, 608 N.Y.S.2d 618 (Just.Ct.1994); Labadie v. Semler, 66 Ohio App.3d 540, 585 N.E.2d 862 (1990); Potomac Ins. Co. v. Torres, 75 N.M. 129, 401 P.2d 308 (1965).

We note, too, that this conclusion does no harm to chapter 61, Florida Statutes, that part of the dissolution of marriage statute dealing with custody and support of children. "Shared parental responsibility" in this context means that the parent, if at all possible and in the best interest of the child, should "retain full parental rights and responsibilities,..." and to "confer with each other so that major decisions affecting the welfare of the child will be determined jointly." § 61.046(11), Fla. Stat. (1998). We agree with the lower court that such language providing for shared parental responsibility in a dissolution of marriage order and providing rules for the continuing care of minor children cannot, without violation of due process, impose a burden on an absent parent of strict vicarious liability for damages caused by the minor child.
[5] We here express concern that, regarding this particular statute, the legislature has not kept up with the changed reality of dissolution and child custody circumstances since 1956. For instance, the language "living with the parents" does not take into consideration those circumstances where the minor child may not be under the custody or control of either parent, but may be living with a grandparent or guardian. In those circumstances, there is no one from whom a school district or other party could seek to recoup property damages inflicted by a minor. Since the intent of the statute is to hold liable that person or persons having custody and control of the minor, the language of the statute should be amended to so state.
[6] My dissenting opinion is limited solely to the facts of this case and does not attempt to address the multitude of situations that can occur in today's "non-traditional" family structures.
[7] In the literal sense, that can only be true if the majority is referring to the parent who has the ability to keep the minor child under lock and key in the home. In the non-literal sense, obviously, no parent (whether married, single, divorced, or widowed) has the physical ability to control all of the activities of his/her minor child at all times.
[8] A closer reading of the cases relied upon by the majority from other jurisdictions in footnote 4 reveals how they are distinguishable and do not support the majority's holding. See e.g., Gearity v. Salvo, 40 Conn.Supp. 185, 485 A.2d 940 (1984) (mother's exclusive care, custody and control of parties' minor child at the time of the acts complained of was found to be legally sufficient defense raised by father); In re William George T., 89 Md.App. 762, 599 A.2d 886 (1992) (where parent has legal custody of minor and minor commits delinquent act while in hospital, the parent is still liable under state statute notwithstanding fact that minor was not in physical custody or under control of parent at the time); Leonard v. O'Neil, 159 Misc.2d 1029, 608 N.Y.S.2d 618 (Just.Ct.1994) (case against father dismissed where plaintiff was unsuccessful in establishing that father had some form of legal obligation to supervise his daughter); Labadie v. Sender, 66 Ohio App.3d 540, 585 N.E.2d 862 (1990) (mother, not father, liable for son's conduct under statute where mother awarded custody and father was not involved in the discipline of child or involved in any major decisions made with regard to child); Potomac Insurance Co. v. Torres, 75 N.M. 129, 401 P.2d 308 (1965) (although minor may have technically been ward of state, where he was returned to parents' home upon release from the hospital and committed tort, he actually resided with parents at the time for purposes of state statute.).